Atomics & Flavors, Inc. Jazz Pharmaceuticals, Inc. Amnial Pharmaceuticals, LLC Kathleen Sullivan, Appellant, Jazz Pharmaceuticals, Inc. As to the 963, we respectfully submit that you have no need to send it back first because our principal argument is that as to all seven patents, including the 963, the advisory committee art was not a publication publicly available and therefore was not appropriate prior art as to any of the claims. That's the merits. Exactly, Your Honor. That's the merits. If we succeed on the merits of that claim, Your Honor, there'd be nothing to send back. And what if you lose on the merits on that point? Are you waiving any further review of the other claims? We are not, Your Honor. We are not waiving. Well, that's what we need to know. Where do we stand if, in fact, you're entitled retrospectively to that review? Yes, Your Honor. So we believe that you should not remand because Amnial, the only petitioner before you, was waived. You're asking us to decide the non-instituted claims? We can't do that? Your Honor, we believe that as to the non-instituted claims, they waived their right to appeal in light of SAS by failing to ask the board to reconsider. The petitioners in SAS filed a motion for reconsideration on the ground that the non-instituted claims should have been reached and given them a right to appeal. The Amnial petitioners here did not ask for reconsideration before the board. So we respectfully think they waived their right to an appeal in light of SAS. Second, Your Honor, it's not clear to us that SAS... What about a waiver by not preserving the right to appeal the SAS decision? I noticed in your blue brief that you preserve the oil states issue. We did, Your Honor. But you don't preserve the SAS issue. Well, Your Honor, we think it would have been up to Amnial to preserve the SAS issue, and they failed to do so. They did not include in their red brief a paragraph as to SAS the way we included in our blue brief a paragraph as to oil states. So they had the opportunity at two junctures, one to seek reconsideration before the board, which they failed to exercise, as the SAS petitioners had done before the board. And second, they failed to preserve their right to appeal in light of SAS. So your argument, and this is a preliminary issue that's before the court with respect to SAS, and that's whether we even have jurisdiction to hear the issues brought up if there hasn't been a preservation of the right to appeal, similar to what was done in this case for oil states. That's right, Your Honor. We think that were Amnial to press you to give them a remand in light of SAS, that you should decline that on the ground that they waived twice. They didn't seek reconsideration as to the non-instituted claims before the board. And as Judge Rayna, you point out, they didn't seek a contingent appeal in light of a potential agreement on their side in SAS. We're gathering information, so I don't mean to be facetious by this question. But if you were on the other side, would your argument be the same? Your Honor, if I were on the other side, I would say SAS gives us a do-over. But on my side, I have to say, I'm sorry it's too late. You didn't ask for anything that would have preserved your right to a do-over. You didn't seek reconsideration of the non-institutional claims before the board when you had the opportunity to do so. And you didn't preserve a contingent appeal right in your red brief. So I think they're one and done, Your Honor. If you do, however, disagree with us— Do you see something in the SAS Supreme Court decision that supports your position? Your Honor, unfortunately, the Supreme Court decision is cryptic on prospective versus retroactive effect. We do, however, know what the board thinks about prospectivity. The board issued guidance on April 26th in which the board said, faced with a backlog of cases, that it will regard SAS as binding prospectively on new proceedings in which they will have to institute on all claims or none. But the board expressly said that as to pending claims in the docket in which final trial resolution has not occurred, they may take into account the need to institute on— Well, we don't take our instructions from the board. I know you don't, Your Honor. Let's hear from the other side on this point. Let's see, you're not Mr. Maddox? I am Mr. Maddox. Okay. Mr. Maddox for—Steven Maddox for Amnesty. All right. With respect to SAS, it seems to us that we've come this far on the claims that it was instituted on. You should rule on those. Those are properly before you. And that the world would just have to go on with the non-institution and the district court litigation will continue. That would be our position. Did the PTO have jurisdiction to act contrary to what the Supreme Court now says the statute means? In partially—in partially instituting? Yes. Did they have authority to do that? It would seem—it would seem to suggest the statutory authority wasn't there, if the Supreme Court says that. But we did—they did do it. We did go through the litigation process before the board. They did issue an opinion on these three claims, 936. And we've all briefed it up to here, that in the coming appointment, it retroactively undo what's done and fully briefed and already litigated. What about Ms. Sullivan's assertion that you waived the SAS issue? We don't agree with that. It came down when it came down. But it doesn't really matter to us. It seems that we should finish this litigation that came out of the PTO. And there's a district court litigation that's been—stayed pending this. And then we—what if this is done? We go with what we've got. Let's look at this. There's a district court litigation pending, awaiting the decision in this case. Yes. But apparently, the Supreme Court has said to the PTO, you have to institute on all the claims that are raised, correct? That's what the Supreme Court said, yes. Well, if that's true, and we send it back for the PTO to look at all the claims that were raised, and to issue a final written decision on all the claims that were raised, what is there left for the district court to do? If you do that, then the district court will be hearing non-infringement of these patents, and Section 112 issues on these patents. But there would be nothing left to do on obviousness. I'm sorry. You seem dissatisfied. How can I— No, I wasn't satisfied by your answer. If all the claims that are raised have to be decided by the PTO, and they have to issue a final written decision, and that's another question, whether they do or not, then why is a district court litigation still pending? Because there's non-infringement defenses to these patents. That's the only reason? Yes. Okay. Okay, we'll figure it out. Thank you. Okay, so let's proceed with the merits of the appeal. Ms. Sullivan. Thank you, Your Honors. I hope maybe we can moot the SAS problem by persuading you to agree with us on the merits of the ACA, the Advisory Committee Art Materials, failing to constitute publicly accessible prior art, and therefore failing to provide a basis for the obviousness of what's here. Well, there was notice in the Federal Register, and there was an FDA website. Isn't the Federal Register exactly the place where you want to give notice to the world? Well, Your Honor, the question is, notice of what? And let's go back to this court's decision in In Re Lister, which I think is very helpful, and that's the case about a copyright reference not being publicly accessible, even though the deposit copy was on file with the Copyright Office. And you might think you go to the Copyright Office to find notice to the world. But importantly, Lister breaks the inquiry down into several steps. When we're looking for publication prior art, first we ask, does it exist? Second we ask, does a person of interest in ordinary skill in the art have a motivation to look for it there, an incentive to look for it there? And crucially, Lister said, we don't stop at step two. We go on to step three. And step three is, could the person of ordinary skill in the art have located it there? That's even more than Mayo. Well, Your Honor, break it down into two. But look, someone goes to the FDA website if they're interested in this field. Your Honor, I hear you on that, but we're not disputing the factual question of whether a person of ordinary skill would go to the Federal Register or go to the FDA website. We're focusing solely on the legal error the Board committed. When it got to the step, Lister said, we don't stop the inquiry with, is it there and would POSA go there. We ask whether POSA could have located it there. And just because it's on a single page of the Federal Register, page 24,391 out of the 67,702 pages, doesn't mean you can find it. We all live and work in Washington, D.C., and we're all familiar with the Federal Register. Yes, Your Honor. And if you want to know what's going on with a particular agency, you consult the Federal Register. I'm sure you have people in your law firm that are dedicated to looking at every Federal Register notice that comes out every day so that you may inform your clients. Your Honor, let's go back to the cases. I'd ask you to look at appendix pages 33 and 34 and look what the court did. The court didn't say that the person of skill has a way to find that reference to the FDA website in the register. And by the way, we're back in 2001. Internet is still in its infancy. There was no evidence in the record that the Federal Register was online or was indexed or searchable in a way that could have led you. Well, part of the Federal Register are its indexes. And in 2001, now I'm just saying this from my own personal experience, I can go back to 1992 maybe or even earlier and know that the Federal Register had alphabetical and subject matter indexes. Your Honor, there's no evidence in the record about indexability or searchability of the Federal Register. It's a chronological document. It goes by page. And there was no evidence that there was evidence that a person of skill in the art might look to the Federal Register, but the Federal Register is like the library in the old library cases. You still need a card catalog or an index to get you to the single page where the FDA website was referenced. And there was no evidence in the record that there was indexability or searchability as of 2001. I'm sure that Amnial's expert would have put in such evidence if it existed, but there wasn't. So what did the court do? Sorry, what did the board do? Since we're dealing with a federal publication that's widely distributed and has a long established history of providing governmental notices, is this something we could take judicial notice of? Your Honor, you could take judicial notice of the existence of this page. No, the indexes. That there were indexes to the Federal Register in 2001. That the fact that there were indexes, Your Honor, if there were, of course you could. But there is no evidence of which you could take judicial notice that somebody looking for a risk management hearing about the drug Xyrem, an important narcolepsy treatment that has to be controlled because it's subject to abuse and diversion. But you would be looking for FDA advisory committee meetings. So, Your Honor, there was no evidence of index searchability in the Federal Register as of 2001 in the record. If you take judicial notice of the availability of indexing of FDA proceedings, that's still not enough. Because it doesn't get you to Xyrem, it doesn't get you to risk management. There's a lot of things about the FDA that happened. It doesn't get you to this page. Does it get you to the ACA materials? It does not, Your Honor. The ACA materials themselves. Let me break it into two parts. Our main argument, and here I really do want the court to focus on the one page in the board's reasoning about locatability. You can find it, for example, on appendix pages 33 to 34. And when you get there, you're not going to find any law of this court. You're going to find references to regional circuit law about constructive notice the Federal Register gives to stop people from making due process claims against the government. The one site to this court's predecessor court in the Aris Gloves case is not a patent case. It's a case about a customs tariff announcement. So what the court did, and this is the key argument, Your Honor, they skipped the crucial step. Would a person of ordinary skill exercising reasonable diligence, which is a fact question, find this one page in the Federal Register? And there's no evidence a person of ordinary skill exercising reasonable diligence would have found this page, none. What the court substituted was a legal presumption that you take constructive notice of the Federal Register for due process purposes against the government. Therefore, let's transpose that over to patent law, to section 102 and section 103 for purposes of prior publication, prior art, and obviousness. And let's just say anything that ever showed up anywhere in a link anywhere in the Federal Register satisfies reasonable diligence. With respect, we think this court's requirement, Kyocera, Lister, unbroken line of cases, this court's requirement that to be prior art rendering a patent obvious, the publication has to have been locatable through reasonable diligence. Wasn't there evidence that the Internet Archive had links to the AACA materials that were posted on the FDA website in June of 2001? The board found, as a matter of fact, that there was an existence on the Internet as of June of 2001. There was a link to the AACA materials. Correct, Your Honor. Is that a factual finding that we would review for substantial evidence? You would, Your Honor. Why is that not substantial evidence? That is substantial. I want you to… Was this disputed? Yes, it was disputed, Your Honor, but I'm not contesting that as a matter of fact. I'm not going to take on that fight. I'm not going to take on the fight. Let's break it. If three steps is too many, Your Honor, let's make it two. Would a person of skill in the art have wanted to find it in the Federal Register where it exists? And second, would the person of skill in the art have been able to find it in the Federal Register if he went there? Is there a library and it's on the shelf? And is there a catalog and an index that leads him to find it? We're fighting only on step two. I'm not going to fight you on step one, substantial evidence, leave it to the Board. But I am fighting you on step two because what the Board did was a legal error. It substituted constructive notice from the due process context for reasonable diligence of the person of skill. And it read reasonable diligence out of your patent law. And you should not be the first panel to decide that as a matter of patent law, constructive notice… This court has viewed constructive notices. This is an actual printed publication. Your Honor, let's… That appears daily. Yes. In which important meetings of federal agencies are noted, including the FDA. That's correct, Your Honor. And by the way, the prior art isn't, of course, the notice. The asserted prior art is the ACA materials. So how is this constructive notice then? Well, because if you look at pages 33 to 34… If I could trouble Your Honor just to read you. All six opinions are identical on this point, so we can just take any one of them to find the error. The error happens on the carryover from appendix 33 to 34 where the Board says the federal register provides notice to interested individuals of the actions of federal agencies. And therefore, that is legally sufficient notice, page 34, legally sufficient notice to satisfy reasonable diligence. We think that's not right. We think reasonable diligence for a person of skill in the art, here a person with pharmaceutical background and some computer skill who understands controlled distribution systems. A person of skill in the art doesn't live every day to look at the federal register, which is chronological, no evidence it was indexed or searchable in the record. Your Honor may decide to take judicial notice, but you still won't find judicially noticeable availability of this hearing out there in the world, Xyrem risk management. The other side's expert admitted he was thumbing through a paper copy and he didn't actually know of other risk management references involving this drug, Xyrem, elsewhere in the 2001 list. What we are asking you to do is correct the Board's legal error of substituting constructive notice of the federal register for reasonable diligence standard. Your Honor, this is not a case where the prior art was disseminated in the federal register. All that was disseminated in the federal register, we would argue without an ability to find it, was a treasure map clue that said X marks the spot, go find the prior art in the FDA website. I want to be very clear on one thing. Before you is not a possible alternative argument that the ACA materials themselves were available in a prior publication. There was no evidence in this case, none, much less substantial, that the ACA materials themselves, the transcript of the June 6th hearing, the materials that Jazz Pharmaceutical's predecessors submitted to the hearing, there's no evidence that that was available in a way that a POSA could have located. None. In fact, Amniel's expert conceded if you look at the key evidence the Board relied on, the Board on A33 to A34 refers to the Amniel expert Dr. Valleck's declaration, Exhibit 1007 at paragraph 47. You can read it yourself on appendix 9292 to 9293. He said the only thing I'm saying was published was the federal register. In fact, the District of New Jersey has found that the ACA materials themselves were not prior publication. So this case all comes down to whether the federal register itself gives rise to constructive notice of a clue to find the prior art elsewhere on our website. Was there a German thesis that was not readily retrievable? Is it like a German thesis? Yeah. I mean, do we have an old case like that? You have a lot of them, Your Honor. I would say that this is exactly like Bayer. You're thinking of the Bayer case. The Bayer case, yeah. The Bayer case. It's just like the Bayer case. That's in your favor, I think. In our favor, it's just like Cronin. And crucially, Your Honor, it's just more recently in the web world, it's just like Blue Calypso against Groupon. It's just like that because there the board found there was no public accessibility to a document that wasn't obtainable. It might have been on the web somewhere, but there was no way to locate it. And you affirmed the findings of the board on that. And your point is that maybe the federal register is public notice, but it didn't have the reference in it. That's right. It had no way to find the reference, Your Honor. It had the links. Did it not? It had the links to the information in the federal register. That's correct, Your Honor. It did have the link, but there was no way to find the single page. It's a needle in the haystack problem. It's a German thesis. You're not arguing that the ACA materials were not in the federal register. You're arguing that it's difficult or impossible to find them. That's exactly right, Your Honor. Where X marks the spot, that X is the ACA materials. No, it's not the materials. It's a link to the materials, Your Honor. But assuming that the link to the materials is enough, you couldn't find X marks the spot. And the reason is there's no substantial evidence that the federal register was online, indexable, or searchable. We have a back to the future problem here. Does it have to be online? Oh, no, Your Honor. We're not suggesting any categorical rule here that it has to be online or that it has to be indexable or searchable. What we are suggesting is this record is devoid of substantial evidence of locatability. We're in the thesis in the German library or the thesis in the Reed College library or the private blog page that wasn't accessed. We're in that world. We're not in a world where you can leap that chasm of locatability by constructive notice of the federal register. Assuming that indexes are available, is it your argument that had you used those indexes that you would not have found the material? Our argument is there's no evidence that those indexes existed or that had you used them, you could have found them. So, yes, that is our argument. Our argument is that Amniel would have had to show not the mere existence of the federal register page. Thesis existed in the German library. Thesis existed in Reed College. Private blog posting was up. There has to be some method the person of skill and the art would have been able to use to find it. There wasn't here. And where I really think the key is, Your Honors, is it would be a major change in the law for this panel to announce for the first time that constructive notice of the federal register, look at those pages on cases cited on A34. They're out-of-circuit cases about due process. Somebody says, I didn't know you were going to have the train go across my property. And the courts say, out-of-circuit, yes, you did. It was in the federal register. Those due process cases should not be used to eliminate the reasonable diligence requirement that your court has established, as a matter of fact. That would be a major change in the law, and you should reverse. I'll leave the other arguments to the briefs unless the court has questions. Thank you. Well, at the moment, we'll save you a little time, Ms. Sullivan. Thank you, Your Honor. Thank you. Mr. Maddox. We're not asking you to hold the constructive notice of the same thing as something that's publicly accessible by a motivated person of ordinary skill in the art exercising reasonable diligence. The board didn't hold that. We're not asking you to hold that. The area of what is a printed publication is, of course, a question of law, with underlying questions of fact. One of those questions of fact, as Ms. Sullivan said, is whether you meet the standard that it's either disseminated or otherwise made available to the extent the person's interested and skilled in the art. It doesn't have to be locatable. And what about the German thesis? Well, there's two different bunches of cases there, as you have recognized most recently in the Suffolk case. You've got, on the one hand, what this court continually refers to as the library cases, and that's where a thesis is sitting on a shelf or not yet quite on the shelf in a pile somewhere, and the person of ordinary skill in the art has the great good fortune for no reason whatsoever to have wandered into Freiburg, Germany, and wandered into that university and then said, gee, now I'll look for this. That's where it's in one place, there's no dissemination, and those cases stand that if you don't disseminate and you're in one place, frankly, it can even be, even if you're in Germany, it's enough if you have an index when the person stumbles in there. But if you don't have an index and you're in one library and you haven't told anyone about it and you haven't disseminated it, then no. So the cases handle it both sometimes as a question of fact, it's public accessibility, sometimes as a question of law, it's a bit mixed up. The board did it both ways, well, one way. The discussion that Ms. Sullivan's pointing you to actually starts,  whether a POSA exercising reasonable diligence would have been capable of locating the exhibits. The board took this as a factual inquiry, and it did, and it started, you can look at appendix 255. What do you say to your opponent's claim that there's no substantial evidence here that a POSETA would have been able to find the information because there were no indexes? There's no evidence at indexes. Right. I would say what you said in the Suffolk case, that a printed publication need not be easily searchable after publication if it was sufficiently disseminated at the time. And dissemination, frankly, is a fairly low standard under Klopfenstein. At MIT, you've held that a poster at a conference followed by the distribution of six copies is dissemination. As Your Honor indicated, the Federal Register is widely disseminated, always has been, and there are people who the idea that a person of ordinary skill in the art, which the board found factual, would be motivated to go to the Federal Register to keep tabs on what's going on in this area, that that person, motivated to go to the Federal Register, then would have been stymied because he couldn't look through the FDA notices as they came out or as they were collected over the year. I mean, if the New York Times comes out daily, if that wasn't searchable, would we say it's something published in the New York Times? So was there or was there not evidence that the Federal Register was indexed in a way that made it searchable in 2001? I'm not aware of that evidence. I don't think so. I think the whole case was litigated on it was not searchable by keyword. It was referred to throughout the papers as indexed, but I don't believe there was evidence to record that. You asked about judicial notice. You can certainly take judicial notice that the Federal Register is widely disseminated and always has been since 1934 when it started. They say on page 13 that the Federal Register is the equivalent to the This court has held that dissemination can be enough even just giving a talk at a conference. Even putting something up on a server for seven days could be dissemination. And it's in Suffolk that you really sort of systematize what's going on here. You've got the library cases. Come and get it. Hope you find the right library. But once you're there, you're entitled to some indexing. And then there's if you're sitting in the library and you don't have it, that's Hall case. That's the German University case you asked about to exploring. And that's also where Lister was. And Lister itself was very clear. Excuse me, not very clear. Said, listen, while we have, here's the quote, while cataloging and indexing have played a significant role in our cases involving library references, this is Lister, we have explained that neither cataloging nor indexing is a necessary condition for reference to be publicly accessible. And that was picked up on in Suffolk where you said it need not be easily searchable after publication if it was sufficiently disseminated. And then you turn to what is sufficiently disseminated. And you looked at Klopfenstein and MIT. And you have had one or two cases where you said, and this is, for instance, SRI International, which you remanded summary judgments. That wasn't quite a decision. But where you said, look, this is somewhere in between. The thesis sitting in Germany and a published paper. You mentioned the New York Times, something published in the New York Times. Yes. Before the internet. Yes. And before you could go up to the upper right-hand corner of their website and pick out search. Right. Were papers as of 2001 things published in the New York Times searchable? And if not, they still were accessible to the public, right? That's my point. I don't know if they were searchable. But to say a daily publication with a wide dissemination comes out daily and the people who are motivated to look at it for their area. As to what it says. As to what it says, right. And what does it say with respect to this? What is it? ACA? ACM? Right. It says there's going to be this meeting of the advisory committee. It's going to be about risk management, distribution control, safety. The sponsor is going to be presenting things. Here are the materials from this link. Click this link and go there. That, by the way, is not being challenged here. It was challenged below. They litigated and lost. The fact is, when the Federal Register wants to make available documents, it doesn't shove them all in the Federal Register, except for the Microsoft settlement. The fact that it said what was going on, and everyone agrees that the person of ordinary skill, as the board found it, which was motivated to go to the Federal Register, into these things, everyone agrees that when they saw that notice, they would click those things, those links, and get these documents. There's no difference there. Well, it begins to sound like your argument is that the information was out there and POSITA would have known. But there's no bridging that gap. So it seems like you are arguing that this was constructive notice? No. And your opponent is. Why is this not constructive notice? Because, first of all, it was dealing with declaration testimony from Dr. Belook, which the court cited in this section, saying that a POSITA exercising reasonable diligence would have been able to locate the ACA, and it goes on, and there's a whole bunch of declaration testimony that the board relied on. They said, here's what the petitioner is saying. Here's their evidence. Then they said on the next page, we are not persuaded by the attacks that JASA has made on this testimony. And then they're saying, so it's publicly accessible. In terms of constructive notice, that's something different. Yes, the Federal Register is used for constructive notice. It is in the statute. Other things in that statute, by the way, say it's a presumption that it was publicly available. So that's 44-1507-2, publication in the Federal Register. But we don't need to go there. It's the Federal Register. The person of ordinary skill and the art here is motivated to go to the Federal Register and find it. There was expert testimony that the person would have located it. There was some attacks on that, similar to the attacks being made now. But the board on the factual issue said, no, we're not persuaded by that. This is something that's a factual issue. Ms. Sullivan said public access is a factual issue. It is. The board took the evidence and the expert opinion that the person would have found it, was motivated to, and would have found it, and looked at them. There was no expert evidence the other way, because all their expert evidence was based on this post of being a new hire behind the CBS counter. And so it would be substantial evidence, even if there had been countervailing evidence. But there was not. And so there's at least substantial evidence for that factual finding. We have here fundamentally. Also, as we did in Suffolk, there's some overstating of the difficulty. There's one page in 17,000. As the court knows, they can take judicial notice of. The register comes out every day. It's divided by departments and their notices. And no one interested in what the FDA is doing would look at anything other than the FDA notices, or the Department of Health and Human Services. You can see it on page 9797 in the appendix. That's where the page is. You can see headings, Department of Health and Human Services. But as in Suffolk, it doesn't really matter that they're overstating, because we have dissemination here. We have wide dissemination. And we have a motivated person of ordinary skill and generality. And if you think it's somewhere in between, you would look to the Klopfenstein factors, which is from the Klopfenstein decision, 380 at 1350. And Klopfenstein said, well, it's not quite pure library. Klopfenstein is not quite pure publication. You have to take into consideration all the facts. And it looked at four factors. It said, the first one is length of time that the reference was available. Well, it was put in the Federal Register and stayed in the Federal Register for, I don't know if it's still there, if the links are still active, but certainly for a very long time. The second factor, expertise of target audience for the reference. Yeah, the way the person of ordinary skill in the art was found by the board. This is someone who is interested in that subject and has some abilities in that subject and would look at that notice and click that link, because this is what they're all about. Third factor, expectation of no copy. Well, the whole point of the Federal Register is to get things out there. The whole point of making documents available to those who want to participate in this meeting is to get things out there. And one CFR 2.6 specifically says, the Federal Register is subject to unrestricted use and copying. There's no expectation of secrecy or no copying. And the fourth factor is the simplicity of copying the reference. Well, that's pretty easy. I'd like to just point out that in Suffolk, which is your most recent page from New Carriage 2014, in Suffolk you had a user post, a news group post. And one of the things this court pointed out was, hey, the whole purpose of this user group is to have dialogue, have people involved in dialogue. This is not like a thesis. No thesis is put in a library with a view towards getting dialogue going with the public. The Federal Register is only about getting dialogue, getting information to the public. And by the way, if you have a motivated person, Rodney Sconey, and he is motivated to look in the Federal Register, which is finding a fact with the board set, the idea that that person couldn't find the notice in the Federal Register is going to cast quite a shadow over the workings of the executive agencies which function using the Federal Register to get out the proposed rules and the orders and hearings, et cetera. Do you have any questions? Thank you. Thank you, Mr. Maddox. Thank you, Your Honor. To be very clear, the question of public availability is a question of law. I did not say it was a question of fact. It's based on subsidiary facts, and my argument to you is here there were no subsidiary facts on locatability. And I believe my friend on the other side just confirmed our argument. He said, it's the Federal Register. And the court said, it's the Federal Register. But with respect, saying it's the Federal Register is not enough unless there is some way, once I get to the Federal Register, to find a XIRM risk management proceeding. And there's no evidence that there was that. My friend on the other side actually just conceded. There was no evidence, Your Honor, of indexability. And, in fact, you can look at a particular page in the record where counsel at the board conceded that there was no evidence, one way or the other, on indexability. That concession is at A, 18,175. There's no evidence either way. You're distinguishing between findability and accessibility. I believe findability is required for accessibility under Lister, Your Honor. Because, remember, Lister has that crucial language that says, even if there's the existence of something out there in the world, that does not end our inquiry. That was the exact language that Lister's decision uses. That does not end our inquiry. We must ask whether a person of skill interested in finding the information is capable of finding it. And there's no evidence here that they were capable of finding it. There was no evidence that the expert on the other side had a search term. Your Honor, what would you do when you got to the Federal Register? What search terms would you use? There were 67,702 pages in the 2001 Federal Register. And there's no indication in the record that there was any way to find Xyrem, the name of our drug, or find risk management proceedings or control distribution proceedings. In fact, the expert on the other side just admitted he was paging through a paper copy. Aren't these minutes of an advisory group meeting, isn't that what we're talking about? An FDA advisory council? That's right, Your Honor. I want to be clear. Why can't you search FDA advisory council? Your Honor, there was no evidence that in 2001, remember the Internet's in its infancy, that there was any searchability on the FDA website. In fact, I believe my friend on the other side has conceded that the materials themselves, the treasure, were not publicly available. They are resting their whole case, and the Board rested its whole holding, on the idea that public availability of X marks the spot on page 9797. And if you look at nothing else, Your Honor, look at page 9797, to this supposed great public dissemination, it just says background material from the sponsor will be posted on the following website. It's typically available in three weeks. This one page is the supposed public availability. My friend's reliance on suffix technologies should be disregarded. But there was evidence that it was available within two weeks after that, exactly where that map pointed, X marks the spot in two weeks. You're right. There was evidence that showed exactly that that was true. And, Your Honor, there's no evidence that on the FDA website, there was indexability or searchability to find it on the FDA website. So the whole case comes down to whether the Federal Register gave enough to locate. It did not. There's no evidence that it did, and you should not substitute constructive notice. Just to answer, Your Honor, you said it was the board relying on constructive notice. It was. If I can get you to just focus on one other page in the record, look at page appendix 34. It's an exemplary of the holding here. On a broad general level, is that the crux of your argument, that this was constructive? If it was notice at all, it was constructive notice? Yes, exactly, Your Honor. And as a matter of law, constructive notice should not be substituted by this court on an issue of first impression for the reasonable diligence inquiry that this court's precedents require. And you know it's constructive notice, Your Honor, because look at Williams v. Mukasey, the cited Ninth Circuit case. Publication in the Federal Register is legally sufficient notice to all interested or affected persons. That was a constructive notice due process case. The board relied on constructive notice. You should not. You should insist on the reasonable diligence standard being satisfied by anyone who seeks to invalidate an important patent that protects the public health. And you should not change the law in this case. Your Honor, if you disagree with me, we have three alternative arguments amply documented in the briefs for why you should still reverse unclaimed construction. I will repeat them if Your Honors have any questions. It's not proper rebuttal. Understood, Your Honor. I just wanted to be clear I wasn't waiving them. Thank you very much for considering our arguments, Your Honor. Thank you. Thank you, Ms. Sullivan. Mr. Maddox, the case is taken under submission.